FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2018 APR 27  PH 12: 05

Civil Action Number:

JUAN CARLOS GIL,

6:18-CV-059-ORL-37-TBS

      Plaintiff,

vs.

ORLANDO HEALTH, INC.,

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Orlando Health, Inc. ("Defendant") for injunctive relief, damages, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff Juan Carlos Gil brings this action in Federal Court to stop Defendant from marginalizing the blind and vision impaired public.

2.      As a health care provider, Defendant has abdicated its responsibility to the public by failing to make its medical facilities inclusive to all members of the public including the blind and vision impaired public.

3.      This case arises out of the fact that Defendant Orlando Health, Inc. has operated its medical facilities in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's medical facilities.

4.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's health care system and medical facilities, because it is the year 2018 and all medical facilities should be inclusive for all individuals.

## JURISDICTION & VENUE

5.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's health care system and facilities.

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its information Internet Access Point is available to the general public within this district and the acts constituting violations of the ADA and Section 504 occurred in this District. Further, Defendant's health care system and facilities are located in the district.

8.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

9.      Plaintiff Juan Carlos Gil is a resident of the state of Florida, resides within the Southern judicial district, is *sui juris*, and is disabled as defined by the ADA and Section 504 of the Rehabilitation Act.

10.      Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff suffers optic nerve damage and is legally blind. Plaintiff also suffers from cerebral palsy, is unable to walk, and is confined to a wheelchair.  Plaintiff is substantially limited in the major life activity of seeing.

11.      Plaintiff is a paraplegic athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals.[1]   In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[2], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

---

[1] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being  the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020);  See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm
[2] July 2017

12.     As a paraplegic athlete, Plaintiff is always looking for new medial information on how to improve his quality of life for an active lifestyle.

13.     Plaintiff's disability limits his major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

14.     Plaintiff frequently utilizes the internet. Due to the fact that he is legally blind, to effectively communicate and comprehend information available on the internet and to access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites[3].

**Orlando Health, Inc.**

15.     Defendant Orlando Health, Inc. is a Florida non-profit corporation.

16.     Upon information and belief, at all times material hereto, Defendant owns, operates, and/or manages the day-to-day affairs and facilities of Orlando Health including a variety of medical clinics, hospitals, emergency rooms and urgent care clinics, cancer centers, a heart institute, rehabilitation institute, imaging centers and laboratories, and pharmacies, which are operating within Orange County, State of Florida.

17.     Defendant is a recipient of federal Medicare and Medicaid funds as well as other federal funds and grants and is therefore subject to the requirements of Section 504 of the Rehabilitation Act.

18.     In order to receive federal funding (directly or indirectly), Defendant is required to develop policies and procedures that ensure that persons who are blind or visually impaired will receive adequate and effective communication.

---

[3] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

## FACTS

19.     At all times material hereto, Defendant has owned or operated Orlando Health which is a health care provider open to the pubic consisting of a variety of medical clinics, hospitals, emergency rooms and urgent care clinics, cancer centers, a heart institute, rehabilitation institute, imaging centers and laboratories, and pharmacies.

20.     Being a health care provider open to the public, Defendant's medical facilities are (each) a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36, and are referenced throughout as "medical facility(ies)," "Orlando Health," or "Place(s) of Public Accommodation."

21.     As the operator of Orlando Health, Defendant is a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "… professional offices of a health care provider and pharmacies" as defined in 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

22.     Defendant has provided thousands of pages of information that are provided and published in electronic format on at the URL www.orlandohealth.com ("Internet Access Point").   Much of that content is provided in portable document format ("PDF," which is also referred to "electronic documents" herein).

23.     Defendant's Internet Access Point describes Orlando Health's federally funded health care programs and activities which Plaintiff would like to access.

24.     Defendant's Internet Access Point is an integral part of the provision of medical professional services by Defendant and a gateway and nexus to medical facilities and pharmacies and as such is a Place of Public Accommodation pursuant to Title III, 42

U.S.C. §12181(7)(F) of the ADA[4], 28 C.F.R. §36.104(2), and Section 504 of the Rehabilitation Act.

25.     Plaintiff Juan Carlos Gil is in need of medical services such as offered by and through Orlando Health medical facilities.

26.     During September 2017, Plaintiff called Defendant to inquire about the medical services and new innovation for treatments offered at Defendant's medical facilities.

27.     Plaintiff is particularly interested in Orlando Health due to his specific medical needs, and his interested in finding specialists in the medical field who can offer him the latest in advanced medical technology related to living a more active lifestyle given his disabilities and his optic nerve damage and cerebral palsy (medical needs).

28.     Plaintiff asked Defendant's representative to describe the medical specialties at Orlando Health and to tell him about the financial resources and policies relevant to his medical needs as a paraplegic athlete whom is also blind and suffering from optic nerve damage and cerebral palsy. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to seek the answers to his questions through Defendant's online Internet Access Point.

29.     Following communications with Defendant's representative, Plaintiff attempted to access the electronic documents through Defendant's online Internet Access Point as instructed by Defendant's representative.

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

30.   Defendant's Internet Access Point contains electronic documents which provide information on Orlando Health policies and medical care which affect the public directly. A sampling of links to electronic documents is provided below:

     a.   Frequently asked questions about advance directives[5],
     b.   Patient financial resources, such as the Financial Assistance Program[6],
     c.   Various policies, such as the Patient Billing and Collections Policy[7],

31.   Defendant's electronic documents contain a plethora of information including Orlando Health policies, patient financial resources, and many frequently asked questions.

32.   Through Defendant's Internet Access Point, interested persons can read electronic documents on demand.

33.   However, Blind and/or visually impaired persons require screen reader software to read/comprehend (Defendant's) electronic documents.

34.   Online "on-demand" viewing of the Defendant's electronic documents is not an option available to persons with vision disabilities due to the fact that those documents are provided solely in a *PDF flat surface* format and do not interface with screen reader software as used by blind and visually impaired individuals. Plaintiff (who is legally blind) is such an interested person.

35.   Defendant's electronic documents are not provided in conjunction with the

---

[5] https://www.orlandohealth.com/~/media/files/orlando-health/patients-and-visitors/patient-resources/patientresources_advance_directives.pdf?la=en
[6] https://www.orlandohealth.com/~/media/files/orlando-health/patients-and-visitors/patient-financial-resources/fap_brochure_english.pdf?la=en
[7] https://www.orlandohealth.com/-/media/files/orlando-health/patients-and-visitors/patient-financial-resources/patient_billing_and_collections_policy_selfpay_english.pdf?la=en

sign indicating that their accessibility[8]. As such, Defendant's Internet Access Point is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access Defendant's electronic documents[9].

36.    Defendant's electronic documents are inaccessible so Plaintiff could not (among other things), learn how to apply for the Financial Assistance Program, and get information about advance directives.

37.    Because Defendant's electronic documents are not in an accessible format for the blind and visually impaired and are not provided in accessible HTML format, Plaintiff was prevented from reading the electronic documents in order to become informed of services offered to the public by Defendant because of his vision disability. As such, Plaintiff was left excluded from participating in the services, programs and activities offered by Defendant in a manner equal to that afforded to others who are not similarly disabled.

38.    While Defendant claims to not deny services to any member of the public and to not discriminate by placing its non-discrimination policy within its Internet Access Point, Plaintiff has been denied services because he is unable to comprehend Defendant's electronic documents.

39.    While Defendant addresses individuals with disabilities on its Internet Access Point, and provides information on how it's physical Place(s) of Public

---

[8] W3C WAI-AA WCAG 2.0

[9] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design." Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

Accommodation accommodate individuals with disabilities, the fact is that the electronic documents Defendant provides to the public are inaccessible to blind individuals.

40.    Plaintiff's expectation of participating in online medical health management was destroyed since he could not access Defendant's electronic documents to avail himself of the latest services which Defendant offers to the public.

41.    Plaintiff's inability to access Defendant's electronic documents has resulted in a *real virtual barrier* which has impaired, obstructed, hindered, and impeded Plaintiff's ability to learn about the programs, services and activities available to individuals with health care needs which can be treated at Defendant's Orlando Health medical facilities and the medical services offered by Defendant.

42.    While the Plaintiff could certainly make arrangements for transportation of himself and his wheelchair to an Orlando Health medical facility (location) without access to the services and information on what is needed to obtain medical care, but due to Defendant's inaccessible electronic documents, Plaintiff faces a great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing because he lacks basic understanding of the *who, what, where, and how* to physically travel to Defendant's Orlando Health medical facilities.

43.    Plaintiff's inability to access the electronic documents has hindered, impeded and inhibited Plaintiff's access to Defendant's physical medical facilities.

44.    The fact that Plaintiff could not comprehend the electronic documents within Defendant's Internet Access Point left him with the feeling of segregation, rejection, isolation, and unable to participate in his own health decisions in a manner equal to that afforded to others who are not similarly disabled. Plaintiff has suffered as a

result and has suffered particularized harm and an injury in fact.

45.   Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical medical facility locations in order to participate in the services offered at Defendant's medical facilities. However, Plaintiff is unable to do so, as he is unable to comprehend the electronic documents provided by Defendant for the public.

46.   Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices regarding its electronic documents unless enjoined by this Court.

47.   Defendant's unlawful practices include (but are not limited to) denying Plaintiff (an individual with a disability) the ability to participate in the health care services provided by Defendant at its medical facility locations by failing to provide Plaintiff the ability to comprehend, study, and review Defendant's electronic documents in the same manner as provided to the sighted public.

48.   On information and belief, Defendant has not offered any other credible form of Auxiliary Aids and Services other than its Internet Access Point for the review and understanding of its electronic documents.

49.   Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its medical facilities.

50.   Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

51.     On information and belief, the Defendant is aware its requirement to provide electronic documents in an accessible.

52.     Accessibility isn't just a patient experience issue. Hospitals and healthcare organizations must follow the guidelines set forth in Section 508 of the American Disabilities Act and Web Content Accessibility Guidelines (WCAG) 2.0 AA[10].

53.     Health Care organizations must provide the following type of documents in accessible format: Evidence of Coverage (EOC) ,Annual Notice of Change (ANOC), Summary of benefits, Provider directories, Pharmacy directories, Formularies, Statements and billing, and All patient forms, including Health Insurance Portability and Accountability Act (HIPAA), authorization, consent and admissions

54.     Defendant's inaccessible electronic documents are barriers to the blind and visually impaired public and result in discriminatory and unequal treatment of those disabled individuals, which results in punishment and isolation of blind and low vision individuals from the rest of society.

55.     According to the National Federation for the Blind[11], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[12].

56.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is

---

[10] https://brailleworks.com/accessible-healthcare-documents-and-why-they-matter, Accessible Healthcare Documents and Why They Matter, published July 27, 2017 by BrailleWorks
[11] See  https://nfb.org/blindness-statistics
[12] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

57.     Defendant has acted with deliberate indifference for the provisions of Title III of the ADA in regard to the unlawful practices described herein because Defendant is aware of the availability of computer programs which allow Defendant to save electronic documents in an accessible format.   Despite the ease and accessibility of providing accessible electronic documents, Defendant has failed to reasonably modify its policies, processes and procedures for the same.

58.     As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish.

59.     For all of the foregoing, Plaintiff has no adequate remedy at law.

60.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

61.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

62.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above and would further state as follows:

**Requirement for Effective Communication**

63.     The ADA and implementation of ADAAG require that Public Accommodations (and Places of Public Accommodation) ensure that communication is effective.

64.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems". 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

65.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

66.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

67.     The electronic documents provided by Defendant to the general public have not been provided in accessible format to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

68.     By virtue of Defendant's business being a health care provider which is open to the public, each of Defendant's medical facilities are a place of public accommodation subject to the requirements of Title III of the ADA. 42 U.S.C. §12181(7)(F).

69.     As Defendant's medical facilities and pharmacies are each a Place of Public Accommodation, the ADA prohibits any and all barriers which would limit access by the visually impaired.

70.     When the visually impaired are prohibited from obtaining health care information, determining if their medical insurance carriers are accepted, learning about financial aid and the medical services provided, paying their bill, and from learning the answers from already asked sensitive medical questions, those visually impaired individuals have been barred from accessing that medical care provider/medical facility, and from obtaining medical care that they require.

71.     Virtual barriers to access is just as real as physical barriers to access, for without health care information, acceptability of insurance, and ability to investigate and choose a medical provider, the visually impaired have no access to the goods and services of that medical facility, which is a Place of Public Accommodation.

72.     The Department of Justice has long taken the position that both State and local government websites, websites of private entities that are public accommodations and the content therein (such as electronic documents) are covered by the ADA. In other words, websites of entities covered by both Title II and Title III of the statute and are required by law to ensure that their sites and the content therein (electronic documents,

14

such as Defendant's electronic documents) are fully accessible to individuals with disabilities[13].

73.    By Defendant's representatives referring the public and visually impaired individuals to its Internet Access Point, the Internet Access Point has been rendered an integral part of and gateway to Defendant's physical medical facility locations. Thus, the failure of the electronic documents within that Internet Access Point to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical medical facilities.

74.    Defendant has provided unequal inadequate service, and ineffective communications and services related to the electronic documents it supplies to the public. Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

75.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

76.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford

---

[13] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

77.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

78.     As a result of the inaccessibility of Defendant's physical medical facility locations precipitated by the virtual barriers within Defendant's electronic documents which Defendant provides to the public, visually impaired individuals including Plaintiff are denied full and equal access to Defendant's physical medical clinic locations, in derogation of 42 U.S.C. §12101 et. seq., and 42 U.S.C. §12182 et. seq.

**Electronic Documents**

79.     As stated hereinabove, Defendant's Internet Access Point contains one or more links to electronic documents.  The electronic document's flat surface does not contain accessible coding. The electronic documents do not include a text-based format

(or equivalent). Defendant has not added 'alt[14]' tags or long descriptions for the electronic documents within its Internet Access Point.

80.   In order to meaningfully access electronic documents blind and visually impaired individuals require those documents be saved in an accessible format. Much of the content provided in electronic document format within Defendant's Internet Access Point have not been provided in HTML or with a text equivalent, and are not a webpage[15], therefore, they are inaccessible to visually impaired persons who use screen readers.

81.   Providing electronic documents in a format that can be recognized by screen reader software and therefore making those electronic documents accessible to the visually impaired would not result in any undue burden to Defendant and would not fundamentally change the nature of Defendant's provision of medical services.

82.   The failure of Defendant's electronic documents to be accessible impedes Plaintiff (and other visually impaired individuals) from fully accessing the medical services provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

83.   Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access

---

[14] 'alt' refers to 'alternative text'

[15] (which is an internet document usually in HTML)

Defendant's electronic documents. These violations are ongoing.

84.     As a result of the inadequate development and administration of Defendant's electronic documents, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

85.     There are well established guidelines and readily available components to make Defendant's electronic documents accessible, which would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

86.     As a result of the inadequate development and administration of Defendant's electronic documents, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

87.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to require Defendant to take the necessary steps to make its electronic documents readily accessible to and usable by visually impaired users, and during that time period prior to those electronic documents being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on those electronic documents (such as html format) until such time that the requisite modifications are made.

88.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by the Defendant.

## <u>COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT</u>

89.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above.

90.     Plaintiff is legally blind, which substantially limit him in his major life activities, including his ability to effectively communicate in the sighted world. Therefore, Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

91.     Defendant is a recipient of federal financial assistance by virtue of receipt of Medicaid payments, as well as other federal financial assistance.

92.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

93.     Defendant is aware that the electronic documents it provides to the public do not interface with screen reader software used by the visually impaired.

94.     By virtue of the fact that Defendant operates diverse medical facilities, which are recipients of federal financial assistance, Defendant knew or should have known that blind and visually impaired individuals are likely to utilize medical services Defendant provides through Defendant's medical facilities.

95.     Specifically, as related to violations of Section 504, blind and visually impaired individuals need to comprehend the covered services which Defendant provides. Yet, Defendant's electronic documents are not accessible to blind and visually impaired individuals, as they are not provided in a format to interface with screen reader

software.   Thus, Defendant has failed to provide Plaintiff (and other blind and visually impaired individuals) *any* appropriate and effective auxiliary aids and services for use with the electronic documents it provides to the public.

96.    Because of the failure to provide effective communication, Plaintiff (and other blind and visually impaired individuals) have an incomplete understanding of the health care information, medical services provided, billing, financing, and appointments at Defendant's medical facility locations.

97.    Such failure has impeded individuals who are visually impaired from independently accessing Defendant's medical facilities.

98.    As such, Defendant has failed to provide services to Plaintiff (and other blind and visually impaired individuals) as Defendant would have provided to a similarly situated sighted patient.

99.    Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

100.    Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are blind or visually impaired, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

101.    Defendant's actions were done with deliberate indifference to the rights and needs of Plaintiff (and other blind and visually impaired individuals). See: *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012).

102.    As a result of Defendant's actions, Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals).

103.    As a result of Defendant's actions, Plaintiff has been damaged, has suffered injuries and experienced emotional suffering, pain and anguish.  Plaintiff has suffered an injury in fact.

104.    Plaintiff will continue to face discrimination and suffer damages, as he continues to desire to utilize medical services available at Defendant's medical facilities.

105.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Orlando Health, Inc. and requests that:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA and Section 504 of the Rehabilitation Act;

b) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[16] and sign of accessibility[17] (standard WCAG 2.0) associated with the electronic documents it provides to the public.  Such a clear display is to insure that individuals who are disabled are aware of the accessibility of Defendant's electronic documents;

---

[16] 

[17] 

c) The Court enter an Order requiring Defendant to update all electronic documents made available to the public in order that individuals with visual disabilities can access the electronic documents to the full extent required by Title III of the ADA and Section 504 of the Rehabilitation Act;

d) The Court enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring Defendant's electronic documents into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents to be accessible to individuals with visual disabilities who require those documents to be in accessible format or provided in HTML format;

f) award damages in an amount to be determined at trial;

g) award Plaintiff reasonable litigation expenses and attorneys' fees; and

h) award such other and further relief as it deems necessary, just and proper.

Dated this 18th day of April, 2018.

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*