# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

Civil Action Number:  6:18-cv-00659-PBG-DCI

JUAN CARLOS GIL,

     Plaintiff,

vs.

ORLANDO HEALTH, INC.,

     Defendant.

---

## AMENDED COMPLAINT

---

## INTRODUCTION

1.     Plaintiff Juan Carlos Gil ("Plaintiff") hereby files this Amended Complaint against Defendant Orlando Health, Inc. ("Defendant" or "OHI" "Orlando Health") for injunctive relief, damages, attorney's fees and costs for denying blind individuals an equal opportunity to access healthcare information and services in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 ("ACA"), and  Title III of the Americans with Disabilities Act of 1990 (as amended) 42 U.S.C. §§ 12181-12189 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA") 29 U.S.C. § 794 ("Section 504"), and Section 1557 of the Patient Protection and the Affordable Care Act ("ACA") 42 U.S.C. §18116 ("Section 1557").

2.     Orlando Health markets itself to the world. By promoting itself online through award-winning marketing strategies, Orlando Health attracts people from across the state of Florida and beyond by highlighting its areas of clinical excellence and care in

the medical fields of:  heart, vascular, cancer care, neurosciences, surgery,  orthopedic, neonatology, and sports medicine.

3.      Orlando Health operates a network of specialty hospitals including Orlando Regional Medical Center, Arnold Palmer Hospital for Children, Winnie Palmer Hospital for Women & Babies, Dr. P. Phillips Hospital, South Seminole Hospital, South Lake Hospital[1], Saint Cloud Regional Hospital[2], Health Central, and UF Health Cancer Center.

4.      Orlando Health maintains an affiliated physician network of over 2,000 physicians. Orlando Health admits 110,000 inpatient admissions and 690,000 outpatients annually.  In financial year 2017, Orlando Health had more than $2.68 Billion in recorded revenue and operating income of $217.4 Million (up 26% from 2016)[3].

5.      Orlando Health advertises and markets its health care services world-wide on the internet as a strategy to draw individuals requiring medical treatment from outside the Orlando area to travel to Orlando Health medical facilities, as evidenced by the fact that it serves over 3,000 international patients annually[4].

6.      On its  www.orlandohealth.com  website, Orlando Health states that it "provides information to make it easier for the visitors of our Central Florida hospitals to make use of our helpful resources and facilities"[5]. Orlando Health even provides a

---

[1] 50% ownership
[2] 20% affiliation
[3] https://www.beckershospitalreview.com/finance/orlando-health-s-operating-income-jumps-26-in-fy-2017.html
[4] https://www.orlandohealth.com/news-and-events/news/domestic-medical-tourism-has-more-patients-flocking-to-florida-for-treatment
[5] https://www.orlandohealth.com/patients-and-visitors/visitor-information

discount for out-of-town visiting patients to lodge at the adjacent Hampton Inn/Hilton suite hotel (see hyperlink at Exhibit A)

7.      Orlando Health and its contractors provide critical communications, such as information on health care services, health care notices, visit summaries, follow-up instructions, forms, questionnaires, invoices, and other types of documents within the Orlando Health website www.orlandohealth.com ("Website") in electronic document format which is (and/or has been) inaccessible to blind individuals[6]. As such, Orlando Health and its contractors have deprived blind individuals of full and equal access to medical services, programs, and activities offered by or through Orlando Health medical facilities.

8.      This ineffective communication with members of the public who are blind who are patients of Orlando Health or who are seeking to become patients by seeking medical care through Orlando Health (as well as with blind family members and guardians of patients or those seeking to become patients) compromises those individuals' ability access the medical services through Orlando Health and to review and respond to communications on a timely basis.

9.       Ineffective communication forces these individuals to rely on and divulge private medical and financial information to sighted third parties for assistance.  This disrupts those individuals' access to health care, prevents them from understanding medical options available to them, prevents them from understanding and following medical instructions, and results in unfair financial penalties for not being able to access

---

[6] For semantic convenience throughout this complaint, the term "blind" is used in the broadest sense to include all persons who, under federal civil rights laws, have a vision- related disability that requires alternative methods to access the internet and documents (on the internet or in print).

and pay medical bills on time, all of which leads to significant personal and financial hardship.

10.     More than four decades after the enactment of Section 504 and two decades after the enactment of the ADA, OHI (directly and through its contractors) has failed to and continued to fail to communicate effectively with blind individuals.

11.     Title III of the ADA, Section 504 of the RA, and Section 1557 of the ACA all require hospital systems such as Orlando Health to communicate in an equally effective manner with blind individuals, and to ensure that their contractors (including medical provider groups) do the same.

12.     Orlando Health had signed a Compliance with the America Healthcare Act, yet failed to provide auxiliary aids and services and make the modifications necessary to ensure that blind individuals have an equal opportunity to participate in and enjoy the benefits of programs and services offered by or through Orlando Health.

13.     Auxiliary aids and services for blind individuals include providing electronic documents in accessible format (for example, within Orlando Health's www.orlandohealth.com . Yet Orlando Health has failed to do so even though it was put on notice as to deficiencies within the www.orlandohealth.com website as of September 2017 (refer to Deposition of Joel Price, page 116, lines 12 -25; page 117 lines 1 – 12; page 119 lines 4-5; page 120 lines 1 – 25; page 121 lines 1 – 25, page 122 lines 8 – 25, page 123 line 1., See Exhibit B excerpts from Deposition of Joel Price).

## JURISDICTION & VENUE

14.     This is an action pursuant to Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. §794 ("Section 504") and Section 1557 of the Patient Protection and the Affordable Care Act ("ACA"), 42 U.S.C. §18116.

15.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

16.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events, actions, or omissions giving rise to this complaint occurred in this District and Defendant is conducting business within the jurisdiction of this court by virtue of the fact its primary medical facilities are located within this district.

17.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

18.     Plaintiff Juan Carlos Gil is a resident of the state of Florida and is *sui juris*.

19.      Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).  Plaintiff suffers from numerous medical issues including optic nerve damage, various medical issues surrounding his eyes, and suffers from cerebral palsy. Plaintiff is also unable to walk and is confined to a wheelchair.  Plaintiff is a qualified individual with a disability within the scope of Title III of the ADA, Section 504 of the RA, and Section 1557 of the ACA.

20.     Plaintiff is a paraplegic athlete who travels frequently to Orlando.  Mr. Gil has traveled throughout the state of Florida for his athletic triathlon endeavors, to advocate for the rights of blind and wheelchair bound disabled individuals. And to seek

out the best medical care he can find to change his life limiting condition into cured position.[7]

21.     Plaintiff is a frequent traveler and in the past years has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[8], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).   Plaintiff's travel includes frequent trips to the Orlando area as well as international travel to Columbia and Venezuela.

22.     Plaintiff is legally blind and requires assistive technologies, auxiliary aids and services for effective communication.

23.     Since Plaintiff is blind, he is a frequent user of technology to connect him to the sighted world.  Plaintiff utilizes the internet for all aspects of his daily functioning as the internet affords him the ability to investigate and purchase goods and services without the need of assistance from sighted helpers. Due to the fact that he is legally blind, to effectively communicate and comprehend information including electronic documents provided on the internet, Plaintiff uses commercially available screen reader software[9].

---

[7] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being  the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020);  See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm

[8] July 2017

[9] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

**Orlando Health, Inc.**

24.     Defendant Orlando Health, Inc. is a Florida not-for-profit private corporation.

25.     Defendant owns, operates, and/or manages the day-to-day affairs and facilities of Orlando Health medical clinics, hospitals, emergency rooms and urgent care clinics, cancer centers, a heart institute, rehabilitation institute, imaging centers and laboratories, and pharmacies.

26.     Orlando Health is a qualified Disproportionate Share Hospital by the U.S. government and therefore receives designated funding to treat the indigent public. Orlando Health receives funding/reimbursement directly from the U.S. government based on the medical treatment its medical facilities provide to indigent patients. This funding is in addition to payment made through ACA insurance reimbursements, or Medicare and Medicaid.

27.     Defendant is a recipient of federal Medicare and Medicaid funds as well as other federal funds and grants and is therefore subject to the requirements of Section 504 of the RA and Section 1557 of the ACA.

28.     In order to receive federal funding (directly or indirectly), Defendant is required to develop policies and procedures that ensure that persons who are blind or visually impaired will receive adequate and effective communication.

29.     In order to receive federal funding, Defendant cannot discriminate and must post a notice of non-discrimination with respect to any of its programs and activities, in accordance with the provisions of Title VI of the Civil Rights Act of 1964, Section 1557 of the ACA,  Section 504 of the RA, the Age Discrimination Act of 1975,

and Regulations of the U. S. Department of Health and Human Services ("HHS") issued pursuant to these Title 45 Code of Federal Regulations Parts 80, 84, 91, and 92.

30.     In order to receive federal funding under Section 1557, all health care providers (including Defendant) must submit an assurance of compliance to the Office of Civil Rights (OCR) within the HHS to the effect that it does not discriminate and provides equal access to its services and accommodations to the public (including the disabled community).

## **FACTS**

31.     Plaintiff's disability limits his major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

32.     Plaintiff frequently utilizes the internet. Due to the fact that he is legally blind, to effectively communicate and comprehend information available on the internet and to access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

33.     Defendant has (and had) provided thousands of pages of information that are provided and published in electronic document format on at the URL www.orlandohealth.com ("Website").   Much of that content is provided in portable document format ("PDF"), which is also referred to "electronic documents" herein).

34.     Defendant's Website is an integral part of the provision of medical professional services by Defendant and a gateway and nexus to medical facilities and pharmacies and as such is a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[10], 28 C.F.R. §36.104(2).

---

[10] "The Department of Justice has long taken the position that both State and local government

35.     Plaintiff is (and has been) a frequent visitor to Orlando, Florida and is and has been investigating (through the internet) medical treatment for his numerous medical issues.  Plaintiff has a specific need for specialized medical services (neurological and ophthalmological) which are available to Plaintiff at Orlando Health's medical facilities (see neurological[11] and ophthalmological[12]) .

36.     Prior to the filing of this action, Plaintiff has been investigating the services and accommodations he requires for his specific medical conditions. Importantly, Plaintiff has been investigating hospitals and clinics with specialty in orthopedic care, treatment of cerebral palsy, and diseases of the eye.

37.     During his investigation for medical treatment and new therapeutics which would increase the quality of his life, Plaintiff has learned of Orlando Health specialties in neurology, surgery, and diseases of the eye. In the course of his investigation on Orlando Health, through the internet Plaintiff has learned that Orlando Health caters to 'medical tourism' and courts patients such as himself to come to its highly rated medical facilities to receive cutting-edge medical care with breakthrough technologies.

38.     During April 2018, Plaintiff called Defendant to inquire about Orlando Health medical services and new innovation for treatments related to neurology,

---

Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.
[11] https://www.orlandohealth.com/services-and-specialties/neurology-and-neurosurgery/neurology/specialties
[12] https://www.orlandohealth.com/facilities/orlando-regional-medical-center/services/additional-services/ophthalmology

treatment of cerebral palsy, and diseases of the eye so that he can live a more dynamic lifestyle given his disabilities.

39.     Plaintiff asked Defendant's representative about its neurology and optometric medical specialties at Orlando Health and to tell him about the financial resources and policies relevant to his medical needs as a paraplegic athlete whom is also blind and suffering from optic nerve damage and cerebral palsy. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to seek the answers to his questions through Defendant's online Website.

40.     Following communications with Defendant's representative, Plaintiff attempted to access the electronic documents through Defendant's online Website as instructed by Defendant's representative.

41.     Defendant's Website contains electronic documents which contain a plethora of information including Orlando Health policies, patient financial resources, and many frequently asked questions and provide information medical care which affects the public directly. A sampling of links to electronic documents is provided below:

   a. Frequently asked questions about advance directives[13],
   b. Patient financial resources, such as the Financial Assistance Program[14],
   c. Various policies, such as the Patient Billing and Collections Policy[15],

42.     Plaintiff could not comprehend Orlando Health's electronic documents because those electronic documents' flat surface does not contain accessible coding. The

---

[13] https://www.orlandohealth.com/~/media/files/orlando-health/patients-and-visitors/patient-resources/patientresources_advance_directives.pdf?la=en
[14] https://www.orlandohealth.com/~/media/files/orlando-health/patients-and-visitors/patient-financial-resources/fap_brochure_english.pdf?la=en
[15] https://www.orlandohealth.com/~/media/files/orlando-health/patients-and-visitors/patient-financial-resources/patient_billing_and_collections_policy_selfpay_english.pdf?la=en

electronic documents do not include a text-based format (or equivalent).  Orlando Health has not added 'alt[16]' tags or long descriptions for the electronic documents within its Website.

43.   In order to meaningfully access electronic documents blind individuals require those documents be saved in an accessible format.  Much of the content provided in electronic document format within Defendant's Website have not been provided in HTML or with a text equivalent, and are not a webpage[17], therefore, they are inaccessible to Plaintiff.

44.   Providing electronic documents in a format that can be recognized by screen reader software and therefore making those electronic documents accessible to the visually impaired would not result in any undue burden to Orlando Health and would not fundamentally change the nature of its provision of medical services.

45.    Health Care organizations must provide the following type of documents in accessible format: Evidence of Coverage (EOC) ,Annual Notice of Change (ANOC), Summary of benefits, Provider directories, Pharmacy directories, Formularies, Statements and billing, and All patient forms, including Health Insurance Portability and Accountability Act (HIPAA), authorization, consent and admissions

46.   Orlando Health is a vast medical service provider and as such is aware of the availability of computer programs which allow Defendant to save electronic documents in an accessible format.  Despite the ease and accessibility of providing accessible electronic documents, Defendant has failed to reasonably create a policy,

---

[16] 'alt' refers to 'alternative text'

[17] (which is an internet document usually in HTML)

process and procedures regarding provision of electronic documents.

47.   The failure of Orlando Health's electronic documents to be accessible has impeded Plaintiff from fully accessing the medical services provided by Orlando Health and through its affiliated medical providers and in so doing, Orlando Health has discriminated against the visually impaired.

48.   Defendant's electronic documents are inaccessible so Plaintiff could not (among other things), learn how Orlando Health's medical specialties can apply to his medical conditions so he can obtain a better quality of life by becoming a patient at Orlando Health and benefit from Orlando Health's advancement in neurology and ophthalmology.  Due to the inaccessibility of Defendants electronic documents, Plaintiff was left excluded from participating in the services, programs and activities offered by Defendant in a manner equal to that afforded to others who are not similarly disabled.

49.   While Defendant claims to not deny services to any member of the public and to not discriminate by placing its non-discrimination policy within its Website, Plaintiff has been denied services because he has been unable to comprehend Defendant's electronic documents.

50.   Plaintiff's expectation of becoming a patient at Orlando Health was destroyed since he could not access Defendant's electronic documents to avail himself of the latest medical services which Defendant offers to the public.

51.   Plaintiff's inability to access Defendant's electronic documents has resulted in a *real virtual barrier* which has impaired, obstructed, hindered, and impeded Plaintiff's ability to learn about the programs, services and activities to address his medical needs which can be treated at Orlando Health medical facilities based on

Orlando Health's specialty and groundbreaking technology and advancement in the specific areas which Plaintiff requires medical expertise.

52.     While the Plaintiff could certainly make arrangements for transportation of himself and his wheelchair to Orlando Health's neurology and ophthalmology medical facilities (location), but without access to the information Plaintiff needs regarding its neurology and ophthalmology medical services and information on what Plaintiff needs to bring with him to obtain medical care (due to Defendant's inaccessible electronic documents), Plaintiff faces a great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing because he lacks basic understanding of the *who, what, where, and how* related to Orlando Health providing to Plaintiff medical services Plaintiff is seeking from Orlando Health.

53.   When Plaintiff could not comprehend the electronic documents within Defendant's Website, he again was struck with anxiety, caused by the closed door of access, this rejection left him with the feeling of beginning segregated.

54.   His blocked access yet again, reinforced his isolation in society and being the "other", and unable to participate in his own health decisions in a manner equal to that afforded to others who are not similarly disabled. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

55.   Since April of 2018 and continuing approximately every two weeks, Plaintiff has visited the www.orlandohealth.com website and attempted to view and comprehend the electronic documents contained therein and has been unable to comprehend electronic documents contained therein.

56.   Plaintiff has been and remains desirous of treating his medical conditions at

Orlando Health medical facilities and has the wherewithal to travel to Orlando Health to benefit from the neurology and optometric medical specialties at Orland Health. With his health in mind, Plaintiff continues to be a visitor of the www.orlandohealth.com website and continues to attempt to communicate with Orlando Health by continuing to view Orlando Health's electronic documents so that he can obtain the understanding he needs to patronize Orlando Health neurology and optometric medical specialties.  However, Plaintiff is unable to do so, as he is unable to comprehend the electronic documents provided by Defendant to the public.

57.    Plaintiff is suffering, and will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices regarding its electronic documents unless enjoined by this Court.

58.    Defendant's unlawful practices include (but are not limited to) denying Plaintiff (an individual with a disability) the ability to participate in the health care services provided by Defendant at its medical facility locations and through its affiliated medical providers by failing to provide Plaintiff the ability to comprehend, study, and review Defendant's electronic documents in the same manner as provided to the sighted public.

59.    For all of the foregoing, Plaintiff has no adequate remedy at law.

60.    Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

61.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

62.     The ADA and implementation of ADAAG require that Public Accommodations (and Places of Public Accommodation) ensure that communication is effective.

63.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64.     Being a health care provider open to the public, Defendant's medical facilities are (each) a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36, and are referenced throughout as "medical facility(ies)," "Orlando Health," or "Place(s) of Public Accommodation."

65.     As the operator of Orlando Health, Defendant is a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "… professional offices of a health care provider and pharmacies" as defined in 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

66. Because Orlando Health owns, leases, or operates its affiliated hospitals and health care provider offices, it must abide by the mandates of Title III of the ADA. *See* 28 C.F.R. § 36.201(a).

67. Health care, including information about health care, is a good, service, facility, privilege, advantage, and/or accommodation provided by Orlando Health to its prospective patients, patients and their respective representatives.

68. Orlando Health has failed and is failing to meet its obligation to provide blind individuals full and equal enjoyment of its health care services. In failing to provide blind patients like Plaintiff with electronic documents in an accessible format, Orlando Health has refused to provide the auxiliary aids and services necessary to communicate with blind patients and prospective patients in an effective and timely manner that protects their privacy and independence.

69. Examples of Orlando Health's and their contractors' inaccessible communications include, but are not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information all available on the www.orlandohealth.com website in pdf format.

70. The electronic documents provided by Defendant to the general public have not been provided in accessible format to interface with the widely and readily available technologies that can be used to ensure effective communication.

71. Because Plaintiff cannot independently access the PDF electronic documents, Plaintiff must both find and rely on third-party assistance (which intrudes upon the privacy of their personal medical and financial information), or forego accessing their critical health care information altogether. Orlando Health's failure to

16

communicate effectively with Plaintiff (due to his blindness) puts him at risk from being uninformed about his health care options and (once a member of the Orlando Health network) from being informed as to his health status.

72.     Defendant's inaccessible electronic documents are barriers to the blind public (such as Plaintiff) and result in discriminatory and unequal treatment of blind individuals, which results in punishment and isolation of blind individuals from the rest of society.

73.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems".  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

74.     Providing electronic document in an accessible format (such as HTML as opposed to PDF format) is an auxiliary aids and service and under the Title III regulations; 28 C.F.R. § 36.303(b)(2).

75.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

76.     Blind individuals are effectively barred from accessing medical care providers and medical facilities and from obtaining medical care when they are

prohibited from obtaining health care information, determining if their medical insurance carriers are accepted, learning about financial aid and the medical services provided, paying their bill, and from learning the answers about their HIPAA protected medical questions.

77.     The fact that Orlando Health's electronic documents are inaccessible to blind individuals (such as the Plaintiff) represents Orlando Health's failure to meet its obligations to communicate with blind patients (and potential patients, i.e.: "the public") in an effective manner constitutes an ongoing and continuous violation of the ADA and its implementing regulations.  Unless restrained from doing so, Orlando Health will continue to violate the ADA.  Unless enjoined, Orlando Health's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

78.     As a result of Orlando Health's actions and omissions (unequal inadequate service, and ineffective communications and services related to the electronic documents it supplies to the public), Plaintiff has suffered irreparable harm and will continue to be subject to discrimination and unequal access, until it is absolutely clear that Defendant's wrongful behavior is remedied. He has suffered and continues to suffer from discrimination and unequal access to Orlando Health goods and services.  If there is no change in the status quo, Plaintiff will be denied their right to access and engage fully in the provision of his health care.

79.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

80.     Unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." (42 U.S.C. § 12182(b)(2)(A)(II))

81.     As a result of the inadequate development and administration of Defendant's electronic documents, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12188(a)(1) and 28 C.F.R. §36.303 to remedy the discrimination.

## COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

82.     Congress enacted the RA in 1973 to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance   ". . . be carried out in a manner consistent with the principles of . . . inclusion, integration, and full participation of the individuals [with disabilities]." 29 U.S.C. § 701(c)(3).

83.     Section 504 of the RA Act prohibits discrimination on the basis of handicap in programs or activities that receive federal financial assistance. 45 C.F.R. §84.3(h).

84.     Plaintiff is an individual with a disability protected Section 504 of the RA and is qualified to receive health care services from Orlando Health.

85.     As an otherwise qualified individual, Plaintiff is expressly authorized under Section 505 of the RA which enforces Section 504 (29 U.S.C. §§ 794, 794(a)), incorporating the remedies, rights and procedures set forth in Section 717 of the Civil Rights Act of 1964, including the application of §§ 706(f) - (k), 42 U.S.C. §§ 2000e

(5)(f) - (k).

86.   Orlando Health is a recipient of federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the RA and its implementing regulations. *See* 29 U.S.C. § 794; 45 C.F.R. §84.3(h).

87.   By virtue of the fact that Defendant operates diverse medical facilities and is a recipient of federal financial assistance, Defendant knew (or should have known) that blind individuals are likely to utilize medical services Defendant provides through its Orlando Health medical facilities and associated medical offices.

88.   Section 504 of the RA requires that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance.  29 U.S.C. §794(a)

89.   Furthermore, a recipient may not directly or through contractual, licensing or other arrangements, discriminate on the basis of disability.  45 C.F.R. §84.4(b)(1).

90.   Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others."  45 C.F.R. §84.4(b)(1)(ii)-(iii); *see* 45 C.F.R. § 84.52(a)(2)-(3).

91.   Orlando Health's provision of health care constitutes a program or activity receiving federal financial assistance and, as recipients, they are required to ensure that both they and their contractors comply with Section 504 of the RA.

92.   In failing to provide blind patients like the Plaintiff access to its electronic documents, Orlando Health has failed and is failing to meet its obligation to

provide blind individuals an equal opportunity to use and benefit from the health care programs and activities which Orlando Health offers to the public. In failing to provide patients and prospective patients like the Plaintiff with accessible electronic documents, Defendant has refused to provide the auxiliary aids and services necessary to communicate with blind patients in an equally effective and timely manner that protects their privacy and independence.

93. Examples of Orlando Health's inaccessible communications include electronic documents located within www.orlandohealth.com all of which are delivered in flat surface pdf format as opposed to html format which blind individuals can comprehend with screen reader software.

94. Because Plaintiff cannot independently access Orlando Health's electronic documents, he must either find or rely on third-party assistance, which intrudes upon the privacy of his personal medical and financial information. Orlando Health's failure to communicate in an equally effective manner with blind patients and prospective patients puts those blind individual's health at risk.

95. Accessible formats such as HTML (for documents on the World Wide Web) constitutes auxiliary aids and services under the Section 504 regulations. 45 C.F.R. § 84.52(d)(3). Numerous governmental agencies and commercial entities already provide electronic documents in HTML format for blind persons to be able to comprehend with screen reader software.

96. As a result of Orlando Health's actions and omissions, Plaintiff has suffered and will continue to suffer irreparable harm. Further, Plaintiff has suffered and will continue to suffer from discrimination and unequal access to Orlando Health's

health care services.  If there is no change in the status quo, Plaintiff will be denied his rights to access and engage fully in the provision of their health care.

97.     Because of the failure to provide effective communication to Plaintiff (from his initial inquiry for services in April 2018 and continuing) Plaintiff has had an incomplete understanding of the health care services provided by Orlando Health and its affiliated providers.

98.     Blind and visually impaired individuals need to comprehend and access the electronic documents which Defendant provides to the public. Yet, each time Plaintiff has attempted to access, Defendant's electronic documents, they have not been accessible with Plaintiff's screen reader software, so that Plaintiff was unable to comprehend those documents.

99.     Defendant has discriminated against Plaintiff by failing to ensure that the electronic documents it provides on www.orlandohealth.com are accessible so that Plaintiff is able to comprehend those electronic documents, in violation of Section 504, 29 U.S.C. §794.

100.    As a recipient of federal funds and pursuant to Section 504 the Defendant may not provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others; 45 CFR §84.4(b)(1)(iv).

101.    As a recipient of federal funds and pursuant to Section 504, Defendant may not (directly or through contractual or other arrangements) utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to

discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State; 45 CFR §84.4(b)(4).

102.     As a recipient of federal funds and pursuant to Section 504, Defendant is required to evaluate (with the assistance of interested persons including handicapped persons or organizations representing handicapped persons) its current policies and practices and the effects thereof that do not or may not meet the requirements of Part 84; 45 CFR §84.6(c)(1)(i).

103.     If Defendant's policies and practices do not meet the requirements of Part 84, Defendant is required to modify (after consultation with interested persons, including handicapped persons or organizations representing handicapped persons), its policies and practices that do not meet those requirements (45 CFR §84.6(c)(1)(ii)) and to take the appropriate remedial steps to eliminate the effects of any discrimination that resulted from adherence to its (non-compliant) policies and practices (45 CFR §84.6(c)(1)(iii)).

104.     Based upon the facts alleged herein, Plaintiff has been denied the ability to comprehend electronic documents provided by Defendant which would permit Plaintiff access to enjoyment of rights, privileges, advantages, and/or opportunities Defendant provides to the sighted public (the non-disabled public) in derogation of 45 CFR § 84.4(b)(1)(vii).

105.     Therefore, according to the regulations delineated within 45 CFR Part 84, Defendant has discriminated against Plaintiff (and other individuals with visual

impairments) by providing elements of inaccessibility within its Website such that individual impairments are unable to enjoy the rights, privileges, advantages, and/or opportunities Defendant provides to the sighted public.   As a result, Plaintiff has experienced exclusion, segregation, mental anguish, and humiliation in derogation of 45 CFR § 84 et. al..

106.    As a regulated health care provider, the Defendant knew or should have known that harm to a federally protected right was substantially likely occur by failing to provide effective communication.

107.    From the date of Plaintiff's attempt to communicate with Defendant and comprehend its electronic documents, each time Defendant has augmented or uploaded electronic documents onto www.orlandohealth.com without addressing the accessibility of the electronic documents it is uploading for blind individuals, Defendant failed to act on the likelihood of harm, and in so failing to act, Defendant demonstrated deliberate indifference to providing access to its services, programs and/or activities for blind and visually impaired individuals.

108.    Each day Defendant has uploaded inaccessible electronic documents (on a daily basis) Defendant has made a choice to fail to provide effective communication. Defendant's deliberate choice has to fail meets the threshold (standard) of "deliberate indifference[18]."

109.    Defendant has admitted that, instead of making 1,100 of its electronic documents accessible for blind individuals who use screen readers, in September of 2018

---

[18] Deliberate indifference plainly requires more than gross negligence *Loeffer v Staten Island Univ. Hosp.,* 582 F.3d 268, 275 (2nd Cir. 2009).  Deliberate indifference is a deliberate choice *Bozeman v Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

(five months after the filing of the Complaint [DE#1]) it has simply removed 791 of those electronic documents from its Website; see ¶8 of Affidavit of Daniel Ruyter, Director of Digital Marketing, attached hereto as Exhibit C.

110.    The standard for deliberate indifference is set in *Liese v Indian River County Hospital District*, No. 10-15968 (11th Cir. Nov 13, 2012); See: "deliberate indifference defined in the context as occurring when "the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood," the *Liese* court, quoting from *T.W. ex.rel. Wilson v. Sch. Bd of Seminole Cnty., Fla*., 610 F.3d at 604 (11th Cir.2010); accord *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 275 (2d Cir.2009); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir.2009); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.2001); see Fig. 1



Fig. 1

111.    The act of failing to provide effective communication (failing to provide accessible electronic documents) is beyond gross negligence and has caused Defendant to be in violation of Section 504. See: *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012).

112.    Orlando Health's failure to meet its obligations to communicate with blind patients in an effective manner constitutes an ongoing and continuous violation

of the ADA and its implementing regulations. Unless restrained from doing so, Orlando Health will continue to violate the ADA. Unless enjoined, Orlando Health's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

113.    Orlando Health's refusal to communicate with blind patients in an equally effective manner, through the provision of alternative formats (such as HTML for electronic documents on www.orlandohealth.com), was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other blind patients and prospective patients of Orlando Health medical facilities and associated medical providers.

114.    As a result of Defendant's deliberate choice to fail to provide accessible electronic documents, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from accessing information on the health care services offered by Defendant and thereby been prohibited from making plans to be a recipient of those health care services.

115.    Plaintiff is entitled to injunctive relief as well as to have reasonable attorneys' fees, costs and expenses paid by Defendant.

### COUNT III —VIOLATION OF THE PATIENT PROTECTION AND THE AFFORDABLE CARE ACT

116.    At all times relevant, Section 1557 of the ACA (Section 1557), 42 U.S.C. § 18116 was in full force and effect and applied to Defendant's conduct as alleged herein.

117.    Plaintiff is an individual with a disability protected by Section 1557 of the ACA; 45 C.F.R. § 92.4.

118.   Defendant is a "covered entity" under 45 C.F.R. § 92.4(4)(1) in that it operates a health program or activity, which receives Federal financial assistance including Medicaid reimbursements, and is principally engaged in the business of providing healthcare.

119.   Section 1557 of the Patient Protection and Affordable Care Act ("ADA") prohibits discrimination on the basis of disability in any health program or activity, any part of which receives federal financial assistance, including credits, subsidies, or health insurance contracts. 42 U.S.C. § 18116; 29 U.S.C. § 794.   The nondiscrimination standards under Section 1557 are at least as stringent as the standards under Section 504 of the RA.  45 C.F.R. § 92.3.

120.   Discrimination includes failure by a covered entity to take appropriate steps to ensure communications with participants with disabilities are as effective as communications with participants without disabilities, including failure to furnish appropriate auxiliary aids and services when necessary to afford an equal opportunity to participate in the services and activities of the entity.  45 C.F.R. § 92.202; 28 C.F.R. § 35.160.

121.    For the communications to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. § 35.160. Covered entities must give primary consideration to the requests of individuals with disabilities when considering what types of auxiliary aids and services are necessary.  *Id.*

122.   Auxiliary aids and services include accessible electronic and information technology or other effective methods of making visually delivered materials available

to individuals who are blind.  45 C.F.R. § 92.4. The electronic documents which are the subject of this action are within the definition of information technology as defined in 45 C.F.R. § 92.4.

123.    A covered entity must take appropriate steps to ensure that communications with persons who have disabilities are as effective as communications with others in providing health programs and activities in accordance with the standards found at 28 C.F.R. § 35.160 through § 35.164.  45 C.F.R. § 92.202. Notice of provision of auxiliary aids must be to the public, made in a timely manner and be free of charge, 45 C.F.R. §  92.8(a).

124.    On September 4, 2018, Orlando Health's Director of Digital Marketing Strategy Daniel Ruyter submitted an affidavit in Case Number 6:14-cv-1999-ORL (*Joel Price v. Orlando Health, Inc.*) wherein he stated "1,100 pdf (*sic, electronic*) documents have been identified as incompatible with screen reader software."  Mr. Ruyter further stated that Orlando Health removed from its www.orlandohealth.com website 791 of those documents and that it had reformatted approximately 400 of those documents so that they could be accessed with a screen reader (¶8, Affidavit of Daniel Ruyter attached hereto as Exhibit C).

125.    Clearly by its own admission, Orlando Health's www.orlandohealth.com website has had during the 2018 year a plethora of inaccessible electronic (pdf) documents which blind individuals (such as Plaintiff Juan Carlos Gil) are unable to access. Further, by its own admission, Orlando Health has removed 791 of those documents from public view (which is a retaliatory action, since by September of 2018 – this instant lawsuit had been filed).

126.    On information and belief, as a covered entity, Orlando Health has (for the years 2015, 2016, 2017 and 2018) submitted its **assurance of compliance** with the HHS requirement that it does not discriminate and provides equal access to its services and accommodations to the public (including the disabled community) to the OCR.

127.    However, by its own admission, evidenced by Affidavit of Daniel Ruyter, Orlando Health has not provided equal access to its services and accommodations, due to the 1,100 pdf (electronic) documents on its website (¶8, Exhibit C).

128.    Orlando Health's failure to comply with Section 1557 is further evidenced by Daniel Ruyter's statement that "[F]or Fiscal Year 2019, Orlando Health, Inc. has also obtained approval for the employment of a designated Accessibility Coordinate whose key role will focus on ongoing compliance efforts with § 1557 of the ADA" (Daniel Ruyter likely had a scriveners error as compliance should have referenced ACA and not ADA), see ¶14 of the Affidavit of Daniel Ruyter, Exhibit C.

129.    It is clear from the affidavit of Daniel Ruyter that Orlando Health has, as of the date of Plaintiff's complaint and continuing through the calendar year 2018, had policies, procedures and personnel in place to meet the compliance requirements of Section 1557.

130.    Because its electronic documents have not been accessible to blind individuals, by submitting its "assurance of compliance" to the OCR, Orlando Health has violated the requirements of Section 1557.

131.    Orlando Health has failed and is failing to meet its obligation to notify blind individuals of how they can obtain information in alternative formats.

132.     Orlando Health has failed and is failing to meet its obligation to provide blind individuals an equal opportunity to use and benefit from its health care programs and activities. In failing to provide blind patients like Plaintiff with electronic documents in an accessible format, Orlando Health has refused to provide the auxiliary aids and services necessary to communicate with blind patients and potential in an equally effective and timely manner that protects their privacy and independence.

133.     Examples of Orlando Health's inaccessible communications include the electronic documents contained within its www.orlandohealth.com website.

134.     Covered entities must ensure that their health programs or activities provided through electronic and information technology (EIT) are accessible to individuals with disabilities unless doing so would result in undue financial and administrative burdens or a fundamental alteration in the nature of the health program or activities. *See* 45 C.F.R. § 92.204(a).   Accessible formats such as HTML are auxiliary aids and services under the Section 1557 regulations.  45 C.F.R. § 92.4.  Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

135.     Because Plaintiff cannot independently access Orlando Health's electronic documents, he must either find or rely on third-party assistance (which intrudes upon the privacy of his HIPPA protected personal medical information and financial information), or forego the health care services provided by Orlando Health's facilities and associated providers altogether. Orlando Health's failure to communicate in an equally effective manner with blind patients (such as Plaintiff) has put his health at risk.

136.    From the date of Plaintiff's attempt to communicate with Defendant and comprehend its electronic documents (April 2018) and continuing, Plaintiff's attempts to understand Defendant's electronic documents have been futile because those documents are not programmed to work with screen reader technology even though Defendant has had the means, mode and knowledge to provide Plaintiff effective communications under Section 1557 at the inception of its implementation of that technology.

137.    Orlando Health's failure to meet its obligation to provide effective communication with blind patients and prospective patients (the disabled public) constitutes an ongoing and continuous violation of Section 1557 and implementing regulations.  Unless restrained from doing so, Orlando Health will continue to violate Section 1557.  Unless enjoined, Orlando Health's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law

138.    Orlando Health's refusal to communicate with blind patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of the Plaintiff.

139.    Plaintiff is entitled to seek and recover compensatory damages for the injuries and losses he sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged *supra*, pursuant to 42 U.S.C. § 18116(a) and 45 C.F.R. § 92.302 (d).

140.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

141.    Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Orlando Health, Inc. and requests that:

a) Declare that Defendant's failure to ensure that its and its contractors offer and provide information and other communications in accessible formats to blind individuals violates II and III of the ADA, Section 504, and Section 1557;

b) Declare that Defendant has a duty to provide equally effective access to all information it and its contractors provide to patients and patient representatives within www.orlandohealth.com, including, but not limited to, providing electronic documents in a format which is  accessible to blind individuals being digital navigable, and which interfaces with computer software such that blind individuals are able to comprehend those documents equally as the non-disabled public;

c) Grant a permanent injunction, requiring Defendant, its successors, agents, assigns, representatives, employees, and all persons acting in concert therewith, to develop and implement a comprehensive accessibility policy with respect to provision of electronic documents on www.orlandohealth.com including effective compliance monitoring of its contractors, to provide equally effective access to all electronic documents;

d) award damages in an amount to be determined at trial;

e) award Plaintiff reasonable litigation expenses and attorneys' fees; and

f)  award such other and further relief as it deems necessary, just and proper.

Dated this 7th day of January, 2019.

Respectfully Submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2019, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of

electronic filing to the foregoing:

Andrea L. Diederich, Esq.
Chanel A. Mosley, Esq.
Marshall, Dennehey, Warner,
Coleman, & Goggin
315 E. Robinson St., Ste. 550
Orlando, Florida 32801
Telephone: (407) 420-4412
Facsimilie: (407) 839-3008
aldiederich@mdwcg.com
camosley@mdwcg.com
_Counsel for Defendant_                    _s/Scott Dinin_